Not Reported in B.R.
Not Reported in B.R., 1994 WL 502024 (Bankr.N.D.Ohio)
(Cite as: 1994 WL 502024 (Bankr.N.D.Ohio))

Page 4

proposition. The court in *DaShiell* looked to *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir.1972), and *In re Outlet Department Stores, Inc.*, 49 B.R. 536, 540 (Bankr.S.D.N.Y.1985) (relying on *Grammenos* ), to support the proposition that when actual notice is received Rule 4 should be liberally construed. Going one step further, the *Grammenos* court relied upon the Sixth Circuit Court of Appeals decision in *Rovinski v. Rowe*, 131 F.2d 687, 689 (6th Cir.1942).

The court finds all this law inapposite to the instant case. At issue in *Rovinski* and *Grammenos* was the meaning of the phrase "usual place of abode" insofar as where service must be made. *Rovinski*, 163 F.2d at 689; *Grammenos*, 457 F.2d at 1070-71. Additionally, these cases were decided prior to the amendments to Fed.Rule Civ.P. 4 which allowed for mail service with an acknowledgment instead of personal service. See 2 James W. Moore, et al. *Moore's Federal Practice* ¶ 4.01[32], 4.01[33-2] (2d ed.1994). In this instance, the court agrees with the belief that "[n]ationwide service of process by first class mail is a rare privilege which can drastically reduce the costs and delay of litigation. As a privilege, it is not to be taken lightly," *Schoon*, 153 B.R. at 49; see also *Braden*, 142 B.R. at 319 ("In light of the comparatively abbreviated procedure in bankruptcy, it is of great importance that persons effecting service provide correct notice in accord with the rules.").

The court is mindful of the fact that the OBWC did in fact have actual notice of the Trustee's complaint. The Sixth Circuit has stated that "[i]f a default judgment in bankruptcy proceedings is entered against an individual who, through no fault of his own, failed to receive actual notice by first-class mail, then that judgment should be set aside under these rules upon a showing of meritorious defense." *In re Park Nursing Center, Inc.*, 766 F.2d 261 (6th Cir.1985) (rule 60(b) motion based upon incomplete service under Rule 704). The court does not read *Park Nursing Center* to hold that a default judgment cannot be set aside when a defendant has actual notice. In fact the Sixth Circuit, and other circuit courts, have consistently held that service of a summons and complaint must meet constitutional due process and the requirements of the federal rules in order for jurisdiction to exist over a defendant. See *Friedman v. Estate of Presser*, 929 F.2d 1151, 1154-56 (6th Cir.1991) (no valid service of process on defendant with actual knowledge of lawsuit absent return of acknowledgment); see also, *Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476, 492 (3d Cir.1993) ("notice cannot by itself validate an otherwise defective service"); *Mid-Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297 (7th Cir.1991) (Finding service of the summons and complaint ineffective and quoting *Way v. Mueller Brass Co.*, 840 F.2d 303 (7th Cir.1988) for the proposition that "a 'defendant's actual notice of the litigation ... is insufficient to satisfy Rule 4's requirements.' "); *Echevarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d 24, 28 (1st Cir.1988) ("A defendant must be served in accordance with Fed.R.Civ.P. 4 in order for the court to secure personal jurisdiction over him. Actual notice and simply naming the person in the caption of the complaint is insufficient to subject a defendant to the jurisdiction of the district court."); *Farr v. Spatial Technology*, 152 F.R.D. 113 (S.D.Ohio 1993) (service ineffective to confer jurisdiction over Colorado corporate defendant with actual notice because service was not done pursuant to Ohio law). Also, as with some of the cases cited above, see supra pp. 8-9, *Park Nursing Center* was decided under former Rule 704 which, as noted above, contained the minor error provision, 704(h), which is no longer in effect.

*6 Admittedly, the circuit court authority cited above does not specifically address Bankruptcy Rule 7004, but it does stand for the proposition that effective service requires compliance with constitutional due process principles and compliance with the federal rules. *Presser*, 929 F.2d at 1156. "[A]ctual knowledge of the action [does not] cure[ ] a technically defective service of process." *Id.* (citations omitted). Accordingly, the court finds that the Trustee did not make effective service upon the OBWC and the fact that the OBWC had actual knowledge of the action does not cure that defect. The defect in service precluded this court from taking jurisdiction over the OBWC with respect to the default judgment that was entered on December 16, 1993, and that judgment is, therefore, void. That finding alone does not lead to the conclusion that the OBWC is entitled to the relief it seeks. It has been held that a movant must also demonstrate that it holds a meritorious defense in the action. *Park Nursing Center*, 766 F.2d at 264.

The Sixth Circuit does not require a defendant to prove any likelihood of success when establishing a meritorious defense. *Id.* (citations omitted). The OBWC must merely allege facts, which, if true, would constitute a meritorious defense. *Id.* In this instance, the facts alleged are that the OBWC possesses claims in the amount of $500,000.00 and $6,620,000.00, respectively, arising out of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.  
Not Reported in B.R., 1994 WL 502024 (Bankr.N.D.Ohio)  
**(Cite as: 1994 WL 502024 (Bankr.N.D.Ohio))**

Page 5

operation of the debtor under a state court appointed receiver. Assuming these allegations to be true, as the court must, the OBWC does indeed possess a meritorious defense in this adversary proceeding.

Accordingly, because the default judgment entered against the OBWC is void, the OBWC possesses a meritorious defense, and because relief under Rule 60(b) should be liberally granted in cases of a default judgment, 7 *Moore's Federal Practice* ¶ 60.19 at pp. 60-156 to 60-163, the court will grant the OBWC's motion for relief only from the default judgment entered on December 16, 1993. This finding renders the other branches of the OBWC's motion moot and the court declines to address the motion further.

An Order in accordance with the foregoing shall issue forthwith.

ORDER

For the reasons set forth in the accompanying Memorandum of Decision, the court finds the motion for relief from judgment filed by the Ohio Bureau of Workers' Compensation to be well taken and the same should be, and hereby is, GRANTED.

IT IS SO ORDERED.

> FN1. New Rule 4, effective as of December 1, 1993, provides for service pursuant to state Law under subsection (e)(1). However, the new amendments to Rule 4 are expressly not incorporated into Rule 7004. See Rule 7004(g).
>
> FN2. Rule 704(h) provides:
> (h) Effect of Errors; Amendment. Service of process under this rule shall be effective notwithstanding an error in the papers served or the manner or proof of service if no material prejudice resulted therefrom to the substantial rights of the party against whom the process issued....

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw

Not Reported in A.2d                                                                                                    Page 1
Not Reported in A.2d, 2000 WL 966144 (Conn.Super.), 27 Conn. L. Rptr. 245
(Cite as: 2000 WL 966144 (Conn.Super.))

▷

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.
Eric GOTHBERG,
v.
William CALIENDO et al.
No. CV 990422366S.

May 3, 2000.

MEMORANDUM OF DECISION

THOMPSON

*1 The plaintiff, Erik Gothberg, alleges that on February 13, 1997 while in the course of his employment with the State of Connecticut, he was involved in an automobile accident in which he suffered personal injuries. As a result he brought suit against William and Kathryn Caliendo, which complaint has a return day of February 16, 1999.

On May 13, 1999, the plaintiff, through his attorney, sent notice to the Secretary of State for the State of Connecticut purportedly in accordance with Sec. 31-293 of the Connecticut General Statutes, notifying the addressee that suit had been instituted. Notice was sent certified mail and the return receipt was received by plaintiff's counsel indicating delivery on May 18, 1999.

The State filed a motion to intervene in order to protect its workers' compensation lien on October 18, 1999, which motion was granted by the court, Levin, J. on November 15, 1999. On December 3, 1999 the plaintiff moved to reargue the granting of the State's motion to intervene claiming among other things that notice pursuant to sec. 31-293 was given more than 30 days prior to the State's filing of its motion to intervene. Judge Levin denied the motion to intervene and noted in his decision that "the plaintiff has failed to cite any authority that notice to the State of the pendency of an action pursuant to Connecticut General Statutes § 31-293 is properly served on the Secretary of State, rather than the Attorney General." The court indicated that the issue of timeliness may be asserted through a motion to dismiss.

The plaintiff has now filed a motion to dismiss the intervening complaint, claiming lack of subject matter jurisdiction for the reason that the State has failed to move to intervene in this action within 30 days of notification of its pendency as required by § 31-293. The State counters by claiming that the plaintiff was employed by the Connecticut Department of Environmental protection, a state agency, and notice to the Secretary of State was improper and this did not serve to commence the running of the 30 day period within which it could intervene.

The sole issue in this motion to dismiss is whether, under the above scenario, notice to the Secretary of State is sufficient to commence running of the 30 day period for intervention by an employer in an employee's third-party action as mandated by § 31-293. Neither party has provided the court with authority as to the proper person or official to receive this type of notice.

It would seem that notice should be sent to that person or official where its contents would be most likely to come to the attention of the proper state official. See *State v. Duncan,* 37 Conn.Sup. 825 (1981). In the court's view that would be either the office of the Attorney General which is responsible for handling cases such as this, or the plaintiff's supervisor at the Department of Environmental Protection who should be familiar with the plaintiff's workers' compensation claim. The Secretary of State does not fit logically into this category. [FN1]

> FN1. Service of civil process in any action against the state is to be made on the Attorney General. Connecticut General Statutes § 52-64. A notice of claim for workers' compensation by a state employee is to be sent to the Commissioner of Administrative Services. Connecticut General Statutes § 31-294c. Such notice is then to be sent by the Commissioner to state agency where such employee works. Connecticut General Statutes § 31-294g.

*2 Accordingly, it is the opinion of the court that the notice sent in this case did not comport with the requirements of § 31-293 and therefore the State is not precluded from intervening by virtue of the 30 day limitation.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                           Page 2
Not Reported in A.2d, 2000 WL 966144 (Conn.Super.), 27 Conn. L. Rptr. 245
**(Cite as: 2000 WL 966144 (Conn.Super.))**

The plaintiff's motion to dismiss is therefore denied.

Not Reported in A.2d, 2000 WL 966144 (Conn.Super.), 27 Conn. L. Rptr. 245

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d                                                                                          Page 1
Not Reported in A.2d, 2002 WL 207587 (Conn.Super.)
**(Cite as: 2002 WL 207587 (Conn.Super.))**

▷
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.
Dennis GAVIGAN,
v.
COMMISSIONER OF REVENUE SERVICES.
No. CV010508067S.

Jan. 18, 2002.

Pro se taxpayer appealed from decision of the Commissioner of Revenue Services. Commissioner moved to dismiss. The Superior Court, Judicial District of New Britain, Arnold W. Aronson, Judge Trial Referee, held that taxpayer who relied upon information given to him by clerk of the court that service by a sheriff was not necessary and, thus, commenced tax appeal by filing the summons and complaint with the clerk of the court did not comply with statutes requiring that the complaint be served on the Attorney General, and because taxpayer failed to properly serve the complaint, the Superior Court lacked subject matter jurisdiction to hear matter.

Motion granted.

West Headnotes

**Taxation** ☞3549
371k3549 Most Cited Cases
   (Formerly 371k1086.1)
Pro se taxpayer who relied upon information given to him by clerk of the court that service by a sheriff was not necessary and, thus, commenced tax appeal by filing the summons and complaint with the clerk of the court did not comply with statutes requiring that the complaint be served on the Attorney General, and because taxpayer failed to properly serve the complaint, the Superior Court lacked subject matter jurisdiction over pro se taxpayer's appeal from Commissioner of Revenue Services' decision. C.G.S.A. §§ 12-730, 52-64.

MEMORANDUM OF DECISION ON MOTION TO DISMISS

ARNOLD W. ARONSON, Judge Trial Referee.

\*1 The Commissioner moves to dismiss the plaintiff's tax appeal due to lack of service as required by General Statutes § 12-730 and § 52-64, which deprives the court of subject matter jurisdiction.

The pro se plaintiff commenced this action by filing the summons and complaint with the clerk of the court on April 24, 2001. However, the complaint was not served on the Attorney General in accordance with General Statutes § 12-730 and § 52-64. On July 17, 2001 the plaintiff mailed a copy of the complaint to the Commissioner.

The plaintiff opposes this motion to dismiss on the ground that he relied upon information he claims was given to him by a clerk of the court that service by a sheriff was not necessary. Although he paid a filing fee and recognizance, the plaintiff states that he was told by the clerk that the only thing he had to do was file the complaint in the clerk's office. The plaintiff claims that, as a pro se party unskilled in the law that he had a right to rely on the information he received from the clerk.

Section 12-730 provides that an aggrieved taxpayer may appeal from a determination of the Commissioner within one month after the notice of the Commissioner's determination is mailed to the taxpayer and "such appeal shall be returnable at the same time and served and returned in the same manner, as is required in case of a summons in a civil action." Section 52-64 provides that service of civil process against the Commissioner of Revenue Services "in any appeal authorized ... may be made by leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General or at his office in Hartford."

The plaintiff recognizes that an appeal taken from the action of the Commissioner should be commenced by service in accordance with § 52-64, but contends that the alleged misstatements by the clerk to him that service by a sheriff was unnecessary provides a basis for the court to conclude that it has jurisdiction since the Commissioner has filed his appearance.

Whether or not the clerk misinformed the plaintiff regarding the need to make service in this case is not

germane to the issue of whether the court has subject matter jurisdiction to hear this case. "Appeals to courts from administrative agencies exist only under statutory authority ... A statutory right of appeal may be taken advantage of only by *strict compliance* with the statutory provisions by which it is created ... Such provisions are mandatory, and, if not complied with, the appeal is subject to dismissal." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Hefti v. Commission On Human Rights And Opportunities,* 61 Conn.App. 270, 273, 763 A.2d 688, cert. denied, 255 Conn. 948, 769 A.2d 62 (2001); see *Jade Aircraft Sales v. Crystal,* 43 Conn.Supp. 10, 12-13, 637 A.2d 415, 10 Conn. L. Rptr. 512 (1994).

In *Hefti,* the plaintiff claimed that the clerk misled her, resulting in her failure to timely file her appeal. The court in *Hefti,* relying on *Tarnopol v. Connecticut Siting Council,* 212 Conn. 157, 165, 561 A.2d 931 (1989), affirmed the trial court's decision that it lacked subject matter jurisdiction to hear the plaintiff's case. "In cases involving administrative appeals, even where appellants may have been misled by the actions or inactions of employees of the clerk's office, our Supreme Court has not deviated from the established principles of strict compliance." *Hefti v. Commission on Human Rights and Opportunities, supra,* 61 Conn.App. at 274, 763 A.2d 688. "While the trial court can show some degree of leniency toward a party when there is evidence that it was misguided by court personnel, the court cannot disregard established and mandatory requirements which circumscribe jurisdiction in the first instance." *Tarnopol v. Connecticut Siting Council, supra,* 212 Conn. at 165, 561 A.2d 931; see *Hefti v. Commission on Human Rights and Opportunities, supra,* 61 Conn.App. at 274, 763 A.2d 688.

*2 Since the plaintiff failed to properly serve the complaint in this action, the court lacks subject matter jurisdiction to hear this matter. The Commissioner's motion to dismiss is granted.

Not Reported in A.2d, 2002 WL 207587 (Conn.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 2000 WL 727014 (Conn.Super.)
**(Cite as: 2000 WL 727014 (Conn.Super.))**

Page 1

▷
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.
Barbara LANGER,
v.
COMMISSIONN ON HUMAN RIGHTS AND OPPORTUNITIES.
No. CV 990368912.

May 17, 2000.

Memorandum of Decision Re: Motion to Dismiss (# 107)

MORAN.

*1 On May 22, 1997, the pro se plaintiffs, Alexander S. Langer and Barbara Langer, filed a complaint with the defendant, the Commission of Human Rights and Opportunities (CHRO) against the defendant, the town of Trumbull. The plaintiffs alleged that the town denied them equal public accommodation on the basis of their foreign ancestry and national origin. On December 8, 1998, the CHRO found that there was no reasonable cause for the plaintiffs' action and dismissed the complaint. Thereafter, on December 22, 1998, the plaintiffs filed a timely request for reconsideration with the CHRO. On October 27, 1999, the CHRO mailed its decision rejecting the plaintiffs' request for reconsideration.

The plaintiffs commenced this action by service of process on the CHRO by the Hartford County sheriff on December 3, 1999 and on the town by the Fairfield County sheriff on November 29, 1999.

The CHRO moves to dismiss this action for lack of subject matter jurisdiction. The CHRO contends that the court lacks subject matter jurisdiction because the appeal papers (1) did not include a citation, (2) did not satisfy the statutory requirements for a complaint; (3) did not include a certification of financial responsibility; (4) did not include a return date; and (5) were not served within 45 days from the date the CHRO mailed its final decision. The plaintiffs argue in opposition that their administrative appeal should not be dismissed because they have complied with the statutory provisions for commencement of an administrative appeal.

"[A] determination regarding a trial court's subject matter jurisdiction is a question of law ... It is well established that [i]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Citation omitted; internal quotation marks omitted.) _Lawrence Brunoli, Inc. v. Branford,_ 247 Conn. 407, 410-11, 722 A.2d 271 (1999). "[A]ny complainant aggrieved by ... a finding of no reasonable cause as provided in subsection (d) of said section 46a-83 or rejection of reconsideration of any dismissal as provided in subsection (e) of said section 46a-83, may appeal therefrom in accordance with section 4-183." General Statutes § 46a-94a(a).

"[A]ppeals from administrative agencies exist only under statutory authority ... A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Emphasis added; internal quotation marks omitted.) _Chestnut Realty, Inc. v. CHRO,_ 201 Conn. 350, 356, 514 A.2d 749 (1986). Moreover, because an administrative appeal is a civil action; see Practice Book- § 14-6; appeal papers must comply with the statutory provisions for commencement of a civil action. See General Statutes § 52-45a. Here, the plaintiffs' administrative appeal papers did not conform with the statutory requirements for commencement of a civil action.

*2 A complaint, containing a statement of facts constituting a cause of action and, on a separate page, a demand for relief, did not accompany the writ of summons. See General Statutes § 52-91.

· The action was returnable on Wednesday, December 22, 1999, rather than on a Tuesday, as is required by statute. See General Statutes § 52-48; see also _Carlson v. Fisher,_ 18 Conn.App. 488, 495-96, 558 A.2d 1029 (1989).

The appeal papers that were served on CHRO did not include a statement of financial responsibility. See Practice Book § 8-4. Moreover, the papers served on the CHRO by the deputy sheriff of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                           Page 2
Not Reported in A.2d, 2000 WL 727014 (Conn.Super.)
**(Cite as: 2000 WL 727014 (Conn.Super.))**

Hartford County are fatally defective because they do not contain a citation signed by a competent authority. "In administrative appeals, the citation is the writ of summons that directs the sheriff or some other proper officer to seek out the defendant *agency* and to summon it to a particular sitting of a particular court on a specified day ... The citation, signed by competent authority, is the warrant which bestows upon the officer to whom it is given for service the power and authority to execute its command ... A proper citation, therefore, requires not only the signature of a competent authority, such as a commissioner of the Superior Court, but the direction to a competent authority." (Citations omitted; internal quotation marks omitted.) *Tolly v. Dept. of Human Resources,* 225 Conn. 13, 18-19, 621 A.2d 719 (1993).

"[Section] 4-183(c) [imposes] a time limitation with respect to subject matter jurisdiction. If there is no service at all on the agency within the forty-five day period, the court lacks subject matter jurisdiction over the appeal by virtue of the clear implication of the language in § 4-183(c), read against the background of the preexisting law ... If there is merely an arguable defect in the process timely served on the agency, however, the court does not lack subject matter jurisdiction over the appeal. Under those circumstances, § 4-183(d) applies, and the appeal is dismissible only upon a finding of prejudice to the agency." (Citations omitted; internal quotation marks omitted.) *Glastonbury Volunteer Ambulance Assn., Inc. v. FOIC,* 227 Conn. 848, 856, 633 A.2d 305 (1993).

The court further finds that the plaintiffs' appeal papers were both served on the CHRO and filed with the clerk of the Superior Court on December 2, 1999, within forty-five days after the agency has mailed its decision. See *Taylor v. State Board of Mediation & Arbitration,* 54 Conn.App. 550, 554, 736 A.2d 175 (1999). However, based upon the testimony at short calendar, the court finds that the Hartford County sheriff could not have certified that the appeal papers were a true and attested copy because a copy of the appeal papers were sent to him via mail. Thus, the court finds that service of process on the CHRO was defective because a true and attested copy of the process, including the declaration or complaint, was not left at the office of the Attorney General in Hartford. See General Statutes § 52-64. Therefore, because the plaintiffs have not strictly complied with the statutory provisions for commencing an administrative appeal; see *Chestnut Realty, Inc. v. CHRO, supra.* 201 Conn. 356-57; the appeal papers are defective. The court further finds that the defects in the plaintiffs' appeal papers have resulted in prejudice to the CHRO. See *Glastonbury Volunteer Ambulance Assn., Inc. v. FOIC, supra,* 227 Conn. 856. The court lacks subject matter jurisdiction and the CHRO's motion to dismiss the plaintiff's administrative appeal is granted. [FN1]

> FN1. The court recognizes that the plaintiffs are pro se parties, however, the court cannot disregard the mandatory jurisdictional requirements. See *Basilicato v. Dept. of Public Utility Control,* 197 Conn. 320, 324. 497 A.2d 48 (1985).

Not Reported in A.2d, 2000 WL 727014 (Conn.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in A.2d  
Not Reported in A.2d, 1998 WL 351900 (Conn.Super.)  
**(Cite as: 1998 WL 351900 (Conn.Super.))**

Page 1

▷  
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.  
Joseph B. MARION,  
v.  
Marjorie E. MARION et al.  
**No. CV 970057153S.**

June 18, 1998.

MEMORANDUM OF DECISION RE: MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

POTTER.

*1 This action brought by Joseph Marion appears to be founded in a number of personal disputes between the plaintiff and several individuals, including members of his family, police officers, prosecutors, judges, a public defender, attorneys, a municipal official and a corporation. There are a total of thirty-two defendants, twenty-nine named and three unnamed. The plaintiff's complaint, although largely incomprehensible, appears to attempt to state a wide range of constitutional deprivations as well as alleged torts committed against him. The plaintiff seeks millions of dollars in damages.

The complaint is signed by the plaintiff and dated November 19, 1997. On page thirty-six of the complaint, the plaintiff has provided a Certification stating:

> "Petitioner hereby certifies that a copy of this Complaint and Demand is served by prepaid mail or hand-delivery this November 19, 1997 for all respondents ..."

On November 28, 1997, the complaint was returned to the court along with twenty-nine Returns of Service. Nine of the returns were signed by the plaintiff and twenty were signed by Ronald James Vancellette, Albee Rd., Dudley, Mass., identified on some of the returns as a "Sovereign Man On The Land."

The summons contained a Return Date of December 23, 1997. The summons was signed by Adele Dery, administrative assistant.

Several defendants have filed motions to dismiss. Two filed motions for summary judgment. It appears the plaintiff has filed an opposition to some of the motions to dismiss.

Several of the motions to dismiss claim the plaintiff failed to post a bond in violation of Practice Book § 52, now Practice Book (1998 Rev.) § 8-4. The court finds, however, that the plaintiff has posted a bond.

"A motion to dismiss is the appropriate vehicle for challenging the jurisdiction of the court. Practice Book § 142 [now Practice Book (1998 Rev.) § 10-30]. The grounds which may be asserted in this motion are: (1) lack of jurisdiction over the subject matter; (2) lack of jurisdiction over the person; (3) improper venue; (4) insufficiency of process; and (5) insufficiency of service of process. Practice Book § 143 [now Practice Book (1998 Rev.) § 10-31]." _Zizka v. Water Pollution Control Authority, 195 Conn. 682, 687, 490 A.2d 509 (1985)_. "A defendant may contest the personal jurisdiction of the court even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance." (Internal quotation marks omitted.) _Brunswick v. Inland Wetlands Commission, 222 Conn. 541, 551, 610 A.2d 1260 (1992)_. "Facts showing the service of process in time, form, and manner sufficient to satisfy the requirements of mandatory statutes in that regard are essential to jurisdiction over the person." (Emphasis in original; internal quotation marks omitted.) _Bridgeport v. Debek, 210 Conn. 175, 179-80, 554 A.2d 728 (1989)_.

*2 "[T]he court, in deciding a motion to dismiss, must consider the allegations of the complaint in their most favorable light ..." (Internal quotation marks omitted.) _Savage v. Aronson, 214 Conn. 256, 264, 571 A.2d 696 (1990)_. "The motion to dismiss ... admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone ... Where, however, as here, the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue ..." (Citation omitted; internal quotation marks omitted.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                              Page 2
Not Reported in A.2d, 1998 WL 351900 (Conn.Super.)
**(Cite as: 1998 WL 351900 (Conn.Super.))**

Barde v. Board of Trustees, 207 Conn. 59, 62, 539 A.2d 1000 (1988).

General Statutes § 52-50(a) states that process shall be directed to a sheriff, his deputy or an indifferent person. General Statutes § 52-50(b) states in relevant part: "Process shall not be directed to an indifferent person unless more defendants than one are named in the process and are described to reside in different counties in the state ... The authority signing the writ shall certify on the writ that he administered the oath and insert in the writ the name of the person to whom it is directed ..." See Hamden v. Collins, 85 Conn. 327, 330, 82 A. 636 (1912).

"The person of whom indifference is predicated, must be impartial, and free from bias." (Internal quotation marks omitted.) Lampson Lumber Co. v. Rosadino, 141 Conn. 193, 197, 104 A.2d 362 (1954). "Webster defines indifferent as [h]aving a neutral or unbiased disposition, ... [n]ot inclined or affected to one side, party, or cause more than to another; unprejudiced." (Internal quotation marks omitted.) Id., 196, 104 A.2d 362.

The twenty-nine named defendants were served with the process by either the plaintiff or Vancellette. There is no certification from the person signing the writ that Vancellette was given the required oath. The court finds that neither the plaintiff nor Vancellette was qualified as an indifferent person with the statutory authority to serve process.

General Statutes § 52-57(a) requires service of process upon a defendant personally or at his usual place of abode in this state. Service upon a person's place of employment is not service at the usual place of abode. Grayson v. Wofsey, Rosen, Kweskin & Kuriansky, 40 Conn.Supp. 1, 3, 478 A.2d 629 (1984). General Statutes § 52-57a allows service of process upon a person subject to the jurisdiction of the courts of this state to be served in another state in the same manner as service is made within this state by a person authorized in that state.

The court has addressed the motions to dismiss in the approximate order of their filing.

Vancellette served defendant Joseph Smith on November 24, 1997, by leaving the process at the usual place of abode of this defendant in Massachusetts. (Return of Service.) The defendant filed a motion to dismiss, which included an appearance, on December 22, 1997. It did not include a certification of service. The motion claims the plaintiff lacks personal jurisdiction over this defendant because Vancellette was not authorized to serve this defendant in Massachusetts.

**\*3** The court finds that service by Vancellette in Massachusetts upon this defendant violates the requirements of General Statutes § § 52-50, 52-57 and 52-57a and thus, grants the motion to dismiss of defendant Smith, notwithstanding the absence of certification.

Vancellette served defendant Marjorie Edith Foote Marion on November 24, 1997, by leaving the process at her usual place of abode with Lawrence Joseph Marion, Sr. (Return of Service.) Vancellette served defendant Lawrence Joseph Marion, Sr. on November 24, 1997, in hand. (Return of Service.) These defendants filed an appearance and a motion to dismiss for lack of personal jurisdiction for insufficient service of process on December 24, 1997. The court finds that service of process by Vancellette does not meet the requirements of General Statutes § 52-50 and thus, grants the motions to dismiss of defendants Marjorie Edith Foote Marion and Lawrence Joseph Marion, Sr.

The plaintiff served defendants Michael Darcy and John P. Margaritis on November 24, 1997, by certified mail to Troop D, Westcott Rd, Danielson, Ct. (Returns of Service.) The plaintiff served defendant Mark S. Solak on November 24, 1997, by certified mail at his office. (Return of Service; Affidavit of Defendant Solak.) The plaintiff served defendants Roger R. Caridad and Mark A. Stabile by personal service of the complaint on November 19, 1997, and certified mail of the summons at their offices on November 24, 1997. (Returns of Service; Affidavits of Caridad and Stabile.) The plaintiff served defendant Vincent J. Dooley by personal service of the complaint on November 19, 1997, and summons by certified mail on November 24, 1997. (Return of Service.). These defendants appeared on December 19, 1997. They filed a motion to dismiss on January 2, 1998, for insufficient service of process and failure to include a recognizance. The court denies the motion on the ground of failure to include a recognizance. The court finds that service either by the plaintiff or by certified mail and service at the offices of the defendants violate the requirements of General Statutes § 52-50 and 52-57 and, thus grants the motions to dismiss of defendants Darcy, Margaritis, Solak, Caridad, Stabile and Dooley on the ground of insufficient service of process.

Vancellette served defendant Jeremy N. Weingast on

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                 Page 3
Not Reported in A.2d, 1998 WL 351900 (Conn.Super.)
**(Cite as: 1998 WL 351900 (Conn.Super.))**

November 24, 1997, by leaving the process at his office with his secretary. (Return of Service; Affidavit of Cynthia L. Cote.) Defendant Weingast filed an appearance on January 2, 1998. On January 9, 1998, he filed a motion to dismiss for insufficient service of process. The court finds that service by Vancellette and service upon the defendant's secretary at the defendant's office violates the requirements of General Statutes § 52-50 and 52-57 and thus, grants the motion to dismiss of defendant Weingast.

Vancellette served defendant Harry M. Arters on November 24, 1997, by leaving the process at his office with his receptionist. (Return of Service; Affidavit of Harry M. Arters.) Defendant Arters filed an appearance on January 9, 1998. He filed a motion to dismiss on January 9, 1998, for lack of personal jurisdiction for insufficient service of process and failure to include a recognizance. The court denies the motion on the ground of failure to include a recognizance. The court finds that service by Vancellette and service upon the defendant's receptionist at the defendant's office violates the requirements of General Statutes §§ 52-50 and 52-57 and thus, grants the motion to dismiss of defendant Arters for insufficient service of process.

*4 Vancellette served defendant William Edward Marion on November 24, 1997, by leaving the process at his usual place of abode with his father Lawrence J. Marion, Sr. (Return of Service.) William Edward Marion filed an appearance on December 23, 1997. On January 16, 1998, he filed a motion to dismiss for lack of personal jurisdiction for insufficient service of process and because the action is time-barred. The court finds that service by Vancellette does not meet the requirements of General Statutes § 52-50 and thus, grants the motion to dismiss of defendant William Edward Marion. [FN1]

> FN1. Because the court has granted the defendant's motion to dismiss for insufficient service of process, the court need not reach the issue of the statute of limitations.

Vancellette served defendant Margaret St. Denis on November 24, 1997, by leaving the process at her usual place of abode with her husband Michael R. St. Denis. (Return of Service.) Vancellette served defendant Michael R. St. Denis on November 24, 1997, in hand. (Return of Service.) These defendants filed an appearance on December 30, 1997. They filed a motion to dismiss on January 21, 1998, for lack of personal jurisdiction for insufficient service of process and failure to include a recognizance. The claim of failure to include a recognizance was withdrawn at argument. The court finds that service of process by Vancellette violates the requirements of General Statutes § 52-50 and thus, grants the motion to dismiss of defendants Margaret St. Denis and Michael St. Denis.

Vancellette served Robert Paul Marion and Robert Paul Marion II on November 24, 1997, at their usual place of abode by having "left on first door of building." (Return of Service.) The defendants filed an appearance on December 24, 1997. They filed a motion to dismiss on January 22, 1998, for insufficient service of process. The court finds that service of process by Vancellette violates the requirements of General Statutes § 52-50 and thus, grants the motion to dismiss of defendants Robert Paul Marion and Robert Paul Marion II.

Vancellette served defendants John Marion, Jr. and Joyce Krampitz Marion on November 24, 1997, at their usual place of abode by leaving the process "on first door of building." (Returns of Service.) The defendants filed an appearance on December 26, 1997. They filed a motion to dismiss on January 26, 1998, for lack of personal jurisdiction for insufficient service of process and failure to include a recognizance. The court finds that service of process by Vancellette violates the requirements of General Statutes § 52-50 and thus, grants the motions to dismiss of defendants Lawrence John Marion, Jr. and Joyce Krampitz Marion for insufficient service of process.

The plaintiff served defendants Richard N. Rittenband and George Levine on November 26, 1997, by certified mail. (Return of Service.) Vancellette served defendant Samuel J. Sferazza on November 24, 1997, at his usual place of abode by leaving the process with his daughter. (Return of Service.) Vancellette served defendant Robert A. Martin on November 24, 1997, at his usual place of abode by leaving the process on the front door. (Return of Service.) Vancellette served defendant John C. Driscoll on November 24, 1997, at his usual place of abode by leaving the process on the front door. (Return of Service.) Vancellette served defendant Barbara M. Quinn on November 24, 1997, at her usual place of abode by leaving the process with her husband. (Return of Service.) Vancellette served defendant Kevin Booth on November 24, 1997, at his usual place of abode by leaving the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00581-KAJ    Document 14-3    Filed 11/23/2005    Page 12 of 20

Not Reported in A.2d                                                                                                   Page 4
Not Reported in A.2d, 1998 WL 351900 (Conn.Super.)
(Cite as: 1998 WL 351900 (Conn.Super.))

process on the front door. (Return of Service.) These defendants filed an appearance on December 22, 1997. On January 12, 1998, they filed a motion to dismiss for (1) lack of subject matter jurisdiction on the grounds of sovereign immunity or absolute judicial immunity and (2) lack of personal jurisdiction for insufficient service of process.

*5 These defendants, all judges of the Superior Court, claim that to the extent they are being sued in their official capacity for money damages, the suit is against the state itself and barred under the doctrine of sovereign immunity. "In Connecticut, we have long recognized the validity of the common-law principle that the state cannot be sued without its consent and that since the state can act only through its officers and agents a suit against a state officer is in effect one against the sovereign state." _Horton v. Meskill,_ 172 Conn. 615, 623, 376 A.2d 359 (1977). "[T]he sovereign is immune from suit unless the state, by appropriate legislation, consents to be sued." _Federal Deposit Ins. Corp. v. Peabody, N.E., Inc.,_ 239 Conn. 93, 101, 680 A.2d 132 (1996). "As we have stated many times before, the doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." _Amore v. Frankel,_ 228 Conn. 358, 364, 636 A.2d 786 (1994).

The court finds that the state has not passed legislation consenting to a suit for money damages against the Superior Court judges. Thus, the court grants the defendants' motion to dismiss for lack of subject matter jurisdiction on the ground of sovereign immunity.

These defendants also claim the court lacks personal jurisdiction over them because of insufficient service of process. The court finds that service of process was insufficient as it was not served on the Attorney General as required by General Statutes § 52-64 for actions against state officials.

Although it is unlikely the allegations are addressed to these defendants in their individual capacities, the complaint is difficult to comprehend, and so the court will address the issue of absolute judicial immunity. The doctrine of judicial immunity has long been recognized in this state. _Spring v. Constantino,_ 168 Conn. 563, 565, 362 A.2d 871 (1975). "[T]he immunity rule is designed to promote principled and fearless decision-making by removing a judge's fear that unsatisfied litigants may hound him with litigation charging malice or corruption." (Internal quotation marks omitted.) _Id._ Thus, the court finds that to the extent the complaint is directed against these defendants in their individual capacities, the court lacks subject matter jurisdiction, as these defendants are immune from suit.

Additionally, these defendants claim and the court so finds that, if these defendants were named as individuals, service of process by the plaintiff or Vancellette violates the requirements of General Statutes § 52-50 and service by certified mail violates the requirements of General Statutes § 52-57.

Two defendants have moved for Summary Judgment rather than dismissal.

The allegations of paragraph fifteen of the complaint are directed toward the defendant American Kennel Club (AKC). Although the complaint is difficult to understand, the statements in paragraph fifteen appear to allege that the plaintiff is a co-owner of mastiff litter # WP695222, which the AKC had registered to the plaintiff and then subsequently registered to Marjorie Marion. The plaintiff alleges that by changing the registration of the litter and communicating this information to him, the AKC has (1) violated the plaintiff's property rights pursuant to the due process clause of the fourteenth amendment to the United States constitution and his civil rights provided by 42 U.S.C. § 1983, 1985 and 1986, and (2) has injured him by conversion, theft, fraud and mail fraud. [FN2] On January 12, 1998, AKC moved for summary judgment on all the claims asserted against it, pursuant to Practice Book § 379, now Practice Book (1998 Rev.) § 17-44. The plaintiff did not respond.

> FN2. Paragraph 15 of the complaint reads as follows:
> 15(a). Under due process of law under the U.S.C. amendment 5 and U.S.C. amendment 14, petitioner is injured, by the neglect of due process statement: (A) without an amendment four warrant or process due of law individual respondents, owners, principals, agents Karen A. Reuter, Lisa Carroll, Wanda Hampton, and individual counsel of the American Kennel Club (A.K.C. from Raleigh, North Carolina) neglect upholding and fulfilling petitioner's contract mastiff ownership registration rights and privileges of a breeder in good standing. Petitioner's litter "co-ownership" is admitted in A.K.C. letter for petitioner date 2/14/97 by Karen A. Reuter requiring

Case 1:05-cv-00581-KAJ   Document 14-3   Filed 11/23/2005   Page 13 of 20

Not Reported in A.2d
Not Reported in A.2d, 1998 WL 351900 (Conn.Super.)
(Cite as: 1998 WL 351900 (Conn.Super.))

Page 5

"registration applications are not valid unless signed by all litter owners." Beginning after petitioner registers his Feb-March 1996 mastiff litter # WP695222, A.K.C. agents threaten and badger the witness and victim upto giving up his ownership and placement rights in favor of the theft and extortion conspiracy of Marjorie Marion.

15(b). A.K.C. owners, principals, agents, and counsel are notified by the petitioner 3/27/97, that as A.K.C. agents join in the conspiracy depriving petitioner of his mastiff properties, they join the conspiracy lawsuit as accessories of the mastiff losses. Joinder occurs 5/28/97 by Lisa Carroll's letter evidence of willing intent abetting theft, unlawful conversion, and mail fraud.

15(c). Written notice of fraud (F.R.C.P.9b) is sent the A.K.C. by petitioner in 6/97.

15(d). The A.K.C. send petitioner a letter stating they intend violating petitioner's ownership rights, and granting ownership registration documents for pseudo-owners who have no contract title lawfully from the owner/petitioner Joseph Marion, in support of Marjorie Marion's conspiracy.

15(e). A.K.C. agent Wanda Hampton sends petitioner written letter with seven fraudulent altered registration applications signed by "Marjorie F. Marion" as new litter owner. 15(f). A.K.C. is given notice of fraud (F.R.C.P.9b) without contract (U.S.C.1:10) showing willing intent (42 U.S.C.1986) of depriving property rights (U.S.C. 4, 5, & 14) in conspiracy (42 U.S.C.1985) causing damages (42 U.S.C.1983). The A.K.C. owners, principals, agents, and [counsel] therefore join Marjorie Marion's conspiracy of violating petitioner's civil rights of due process, amendment 4 warrant, and property enjoyment.

*6 "The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." _Wilson v. New Haven,_ 213 Conn. 277, 279, 567 A.2d 829 (1989). The party moving for summary judgment "is required to support its motion with supporting documentation, including affidavits." _Heyman Associates No. 1 v. Insurance Co. of Pennsylvania,_ 231 Conn. 756, 796, 653 A.2d 122 (1995). "[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." _Connecticut Bank & Trust Co., N.A. v. Reckert,_ 33 Conn.App. 702, 712, 638 A.2d 44 (1994). "Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material facts, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue." _Haesche v. Kissner,_ 229 Conn. 213, 217, 640 A.2d 89 (1994). When a party moves for summary judgment "and there [are] no contradictory affidavits, the court properly [decides] the motion by looking only to the sufficiency of the [movant's] affidavits and other proof." _Heyman Associates No. 1 v. Insurance Co. of Pennsylvania, supra,_ 795. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted; internal quotation marks omitted.) _Joe's Pizza, Inc. v. Aetna Life and Casualty Co.,_ 236 Conn. 863, 871 n. 13, 675 A.2d 441 (1996).

The plaintiff claims that since he is a co-owner of the mastiff litter # WP695222, the AKC's change in registration of the litter to Marjorie Marion violated the plaintiff's due process rights and civil rights under 42 U.S.C. § 1983, 1985 and 1986.

"The Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities." _Rendell-Baker v. Kohn,_ 457 U.S. 830, 837, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." _Wilson v. Hryniewicz,_ 38 Conn.App. 715, 720-21, A.2d, cert. denied, 235 Conn. 918, 665 A.2d 610, 663, 1073 (1995). The plaintiff has not alleged that any state or government actors were involved in the registration. His claims in paragraph fifteen of the complaint are directed to the AKC and Marjorie Marion, identified as the plaintiff's mother. (Complaint, 2(a).) The AKC is a not-for-profit, private corporation engaged in the business of registering dogs. (Affidavit of Janet Gaff [Affidavit], 6-7.) It registers dogs on the basis of information provided to it in the registration application by the applicant. (Affidavit, 7, 9.) Looking at the evidence in favor of the plaintiff, the court cannot find that the AKC's change in registration of the litter to Marjorie Marion, assuming

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                Page 6
Not Reported in A.2d, 1998 WL 351900 (Conn.Super.)
**(Cite as: 1998 WL 351900 (Conn.Super.))**

the plaintiff is a co-owner of the litter, is an interference with a federal right of the plaintiff by a person acting under the color of state law.

*7 Thus, the court finds that the plaintiff, even as a co-owner of the litter, does not have a cause of action against the AKC pursuant to the due process clause of the fourteenth amendment to the United States constitution or 42 U.S.C. § 1983.

"An individual may seek damages under 42 U.S.C. § 1985 for conspiracy to interfere with that individual's civil rights if two or more persons conspire to deprive the individual of equal protection or equal privileges and immunities under the laws of the United States. Under 42 U.S.C. § 1986, any person who has knowledge of wrongs being done under 42 U.S.C. § 1985 and who refuses to act to prevent such unlawful acts, shall be liable to the injured party for their neglect to prevent the conspiracy." Koch v. Mirza, 869 F.Supp. 1031, 1036 (W.D.N.Y.1994). Looking at the evidence in favor of the plaintiff, the court cannot find that the AKC's change in registration of the litter to Marjorie Marion, assuming the plaintiff is a co-owner of the litter, constitutes a conspiracy or knowledge of a conspiracy that interfered with the plaintiff's civil rights.

Thus, the court finds that the plaintiff does not have a cause of action pursuant to 42 U.S.C. § § 1985 and 1986 against the AKC.

"Conversion is usually defined to be an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights ... It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." (Citation omitted; internal quotation marks omitted.) Devitt v. Manulik, 176 Conn. 657, 660, 410 A.2d 465 (1979).

A person commits a theft or larceny when "with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." (Internal quotation marks omitted.) Lawson v. Whitey's Frame Shop, 42 Conn.App. 599, 606, 682 A.2d 1016 (1996), rev'd on other grounds, 241 Conn. 678, 697, A.2d 1137 (1997).

The AKC does not engage in the business of determining legal ownership of the dogs it registers. (Affidavit, 8.) The AKC does not resolve ownership disputes involving the dogs it registers. (Affidavit, 9.) The AKC registered mastiff litter # WP695222 based on the information provided to it. (Affidavit, 9.) A registration by the AKC is not an endorsement of ownership to the registrant. (Affidavit, 15.) Looking at the evidence in favor of the plaintiff, the court cannot find that the AKC's change in registration of the litter to Marjorie Marion, assuming the plaintiff is a co-owner of the litter, constitutes conversion or theft of the plaintiff's property.

*8 Thus, the court finds that the plaintiff does not have a cause of action based in conversion or theft against the AKC.

"Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed ... The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." (Citations omitted; internal quotation marks omitted.) Muller v. Muller, 43 Conn.App. 327, 337, 682 A.2d 1089 (1996).

"The manifest purpose of the mail fraud statute is the protection of the post office from use in the execution of frauds." State v. McKenna, 188 Conn. 671, 681 n. 12, 453 A.2d 435 (1982), quoting United States v. Bohonus, 628 F.2d 1167, 1170 (9th Cir.), cert. denied, 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980). The elements of the mail fraud statutes require knowing use of mail communications in interstate commerce to further a scheme to defraud one of money or property. Celpaco, Inc. v. MD Papierfabriken, 686 F.Supp. 983, 989 n. 7 (D.Conn.1988).

Looking at the evidence in favor of the plaintiff, the court cannot find any indication that the AKC's actions or interstate communications induced the plaintiff or furthered a scheme to induce the plaintiff to relinquish his ownership of his property. Thus, the court finds the plaintiff does not have a cause of action in fraud or wire fraud against the AKC.

For all the foregoing reasons, the court finds as a matter of law that the AKC is not liable to the plaintiff on any of the allegations made by the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                          Page 7
Not Reported in A.2d, 1998 WL 351900 (Conn.Super.)
**(Cite as: 1998 WL 351900 (Conn.Super.))**

plaintiff and grants the AKC's motion for summary judgment.

The allegations of paragraph twenty-one of the complaint are directed toward Linda Groh. The statements in this paragraph appear to allege that defendant Groh assaulted the plaintiff, deprived him of his right to free speech and filed a false complaint causing him to be assaulted, kidnapped, arrested and imprisoned for ten hours by the police on January 23, 1993. [FN3]

> FN3. Paragraph 21 of the complaint reads as follows:
> 21. Under due process of law under the U.S.C. amendment 5 and U.S.C. amendment 14, petitioner is injured, by the neglect of due process.
> Statement: without an amendment four warrant or process due of law individual respondent Linda E. Groh in breach of oath of office by accepting the flag of foreign yellow fringe, with knowledge and intent assaults the petitioner Joseph Marion January 23, 1993 at North Grosvenordale Town Hall depriving petitioner of election free speech during an election, and files a false perjured complaint injuring petitioner with armed assault, kidnaping, arrest, imprisonment for 10 hours (demand damages of $75,000.00 per hour), and coercion in a [Superior] Court of nobility by individual [Judge] Richard N. Rittenband with a flag of yellow fringe of foreign suppressing petitioner's constitutional rights. This act is accessory for armed individual [police] John P. Margaritis stalking, assaulting, kidnaping, macing, false arrest, mistrial, neglect of common law trial by jury, depriving Joseph Marion of the civil rights."

The plaintiff instituted the action on November 24, 1997, by service of process on defendant Groh. (Affidavit of Vancellette.) On January 9, 1998, defendant Groh moved for summary judgment on the grounds of statute of limitations and res judicata. The plaintiff argues that the claims asserted against her by the plaintiff are time-barred by General Statutes § § 52-577 and 52-584. The plaintiff did not respond.

"Summary judgment may be granted where the claim is barred by the statute of limitations." *Doty v. Mucci,* 238 Conn. 800, 806, 679 A.2d 945 (1996). "If a defendant chooses to postpone raising a time limitation as a bar to the plaintiff's cause of action by way of a special defense, in favor of obtaining an earlier disposition by way of summary judgment, we see no reason why he should not be allowed to do so. Limitation defenses are procedural and can be waived." *Girard v. Weiss,* 43 Conn.App. 397, 416, 682 A.2d 1978, cert. denied, 239 Conn. 946, 686 A.2d 121 (1996). "Facts that are not alleged in a complaint may be added to the procedural mix and facts in avoidance of the statutory time limitation of action can be considered in a motion for summary judgment ..." (Citation omitted.) *Id.*

\*9 General Statutes § 52-577 provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." The Connecticut three-year limitation period is the operative statute of limitations for tort actions based on federal constitutional and civil rights. *Williams v. Walsh,* 558 F.2d 667, 673 (2d Cir.1977); *Orticelli v. Powers,* 197 Conn. 9, 16, 495 A.2d 1023 (1985). "When conducting an analysis under § 52-577, the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed." (Internal quotation marks omitted.) *Collum v. Chapin* 40 Conn.App. 449, 451, 671 A.2d 1329 (1996).

Looking at the evidence in favor of the plaintiff, the court finds that more than three years had passed from the alleged actions of defendant Groh on January 23, 1993 and the commencement of the action by the plaintiff on November 24, 1997.

Thus, defendant Groh's motion for summary judgment on the ground of statute of limitations is granted. [FN4]

> FN4. Because the court has granted defendant Groh's motion for summary judgment on the statute of limitations ground, the court need not reach the issue of res judicata.

Not Reported in A.2d, 1998 WL 351900 (Conn.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d  
Not Reported in A.2d, 1995 WL 70339 (Conn.Super.)  
(Cite as: 1995 WL 70339 (Conn.Super.))

Page 1

▷

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut, Judicial District of New Haven, at New Haven.  
Linda PAECHT  
v.  
William KELLY, et al.  
CV94 0366523.

Feb. 08, 1995.

*MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS*

WILLIAM L. HADDEN, Judge.

*1 Both defendants in this case have moved to dismiss the case claiming lack of jurisdiction because of defective service.

Service was made on the defendant Kelly by abode service at 277 McGee Drive, Hamden, Connecticut, which is the home of his parents, and where Mr. Kelly resided until 1987. However, Mr. Kelly, a state police officer, had failed to notify the motor vehicle department of his change of address. Therefore, when the plaintiff made inquiry at that department she was given the address on McGee Drive. The process was delivered promptly to Mr. Kelly and he suffered no prejudice by virtue of the manner of service. The motion is denied as to the defendant Kelly.

With respect to the defendant Department of Public Safety, the only claim made in support of the motion to dismiss is that service was improper because the attorney general was not served in accordance with General Statutes Section 52-64. Instead of serving the attorney general, service was made at the office of the defendant Department of Public Safety.

Section 52-64 reads in pertinent part as follows:
"Service of civil process in any civil action ... against any ... department ..., *may* be made by leaving a copy of the process ... with the attorney general...." (Underlining added).

It is the claim of this defendant that service of process in this case can be made only by serving the attorney general, as set forth in Section 52-64. The court does not agree.

The statute uses the word "may" which is generally not construed as being mandatory. An example of language which appears to be mandatory is found in General Statutes Section 52-62 concerning service on a nonresident in an action for negligent operation of a motor vehicle. Subsection (c) of that statute provides that "process ... against a nonresident *shall* be served ... upon the commissioner of motor vehicles...." (Underlining added).

In addition, in the case of *Pack v. Burns,* 212 Conn. 381, which was a suit against the Commissioner of Transportation, the court noted, on page 383, that service of process was made upon and accepted by an employee of the commissioner. It is significant that no question was raised by anyone, including the Supreme Court, about the method of service. It is reasonable to assume that the parties and the Supreme Court in *Pack* saw nothing wrong with the method of service.

It is the opinion of the court that Section 52-64 merely affords a prospective litigant another method of service against a department of the state. This does not mean that service cannot also be affected by actually serving the department at its office, which was done in this case.

Accordingly, the motion to dismiss is denied as to both defendants.

Not Reported in A.2d, 1995 WL 70339 (Conn.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d  Page 1
Not Reported in A.2d, 1998 WL 811469 (Conn.Super.), 23 Conn. L. Rptr. 242
(Cite as: 1998 WL 811469 (Conn.Super.))

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.
John M. HOLLIS,
v.
STATE OF CONNECTICUT JUDICIAL BRANCH.
No. CV 0406665S.

Nov. 13, 1998.

MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO DISMISS

DEVLIN.

*1 The defendant, State of Connecticut Judicial Branch ("State"), has moved to dismiss the complaint brought by the plaintiff, John M. Hollis ("Hollis") on the grounds that the action is time barred. Specifically, the State asserts that Hollis' efforts to invoke the so-called accidental failure of suit statute (§ 52-592) should be rejected. A hearing on the motion was conducted on November 2, 1998. For the reasons set forth below, the motion to dismiss is denied.

After obtaining a Release of Jurisdiction from the Commission on Human Rights and Opportunities on February 26, 1997, Hollis commenced a suit against the State that was served upon the State's Manager of Labor Relations. This original action was brought within the 90-day period required by the Release of Jurisdiction. This suit was dismissed for failure to make service of process upon the Attorney General. See General Statutes § 52-64.

After the dismissal of the original action, the present suit was brought pursuant to General Statutes § 52-592. That statute, in pertinent part provides:
> If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, ... or for any matter of form ... the plaintiff ... may commence a new action ...

The state claims that Hollis cannot use this statute to support the present action because the improper service was not due to any "unavoidable accident." In support of its position, the State relies on Bassett v. Foster, 116 Conn. 29, 163 A. 456 (1932). That case reversed the trial court's decision sustaining a demurrer to a complaint brought pursuant to the predecessor to § 52-592. Bassett did not discuss the concept of "unavoidable accident" as it related to service, but rather turned on the neglect of the serving officer in returning the papers to the wrong place. The second case relied upon by the State, Broderick v. Jackman, 167 Conn. 96, 355 A.2d 234 (1974), also does not support its position. Broderick concerned an action that was erased for lack of jurisdiction. It had nothing to do with insufficient service.

Hollis asserts that the improper service in the original action stemmed from a reasonable, although legally incorrect, interpretation of General Statutes § 52-64. That statute concerns service of process in civil actions against the State of Connecticut and provides that such service "may be made by leaving a true and attested copy of the process ... with the Attorney General" (emphasis added). Hollis argues that the word "may" suggests that service on the Attorney General is not the exclusive form of legal service on the State, and that serving the original action on the Manager of Labor Relations for the Judicial Branch was an accident made unavoidable by the ambiguous language of the § 52-64.

*2 Section 52-592 "by its plain language is designed to prevent a miscarriage of justice if the plaintiff fails to get a proper day in court due to the various enumerated procedural problems." Legassey v. Shulansky, 28 Conn.App. 653, 659, 611 A.2d 930 (1992). One justification for allowing such relief is that the defendant is not disadvantaged because the defendant is put on notice within the applicable limitations period. Capers v. Lee, 239 Conn. 265, 279, 684 A.2d 696 (Berdon J. dissenting) (1996). The State does not make any claim of disadvantage in this case.

Our Supreme Court has held that § 52-592 "is remedial and is to be liberally interpreted." Ross Realty Corp. v. Surkis, 163 Conn. 388, 311 (1972). The statute was adopted to avoid the hardships arising from an unbending enforcement of limitations statutes. Gallo v. G. Fox & Co., 148 Conn. 327, 329, 170 A.2d 724 (1961).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                           Page 2
Not Reported in A.2d, 1998 WL 811469 (Conn.Super.), 23 Conn. L. Rptr. 242
**(Cite as: 1998 WL 811469 (Conn.Super.))**

Based on the full record of this case, the court concludes that § 52-592 should apply to permit Hollis to have "a proper day in court." The original service, although defective, was based on a reasonable interpretation of an ambiguous statute. The defendant acknowledges that it has not been disadvantaged. In such circumstances, the remedial purpose of the statute should be effectuated. Accordingly the motion to dismiss is denied.

So Ordered at New Haven, Connecticut.

Not Reported in A.2d, 1998 WL 811469 (Conn.Super.), 23 Conn. L. Rptr. 242

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Not Reported in A.2d                                                                                                      Page 1
Not Reported in A.2d, 2005 WL 1971865 (Conn.Super.), 39 Conn. L. Rptr. 862
**(Cite as: 2005 WL 1971865 (Conn.Super.))**

H
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut,
Judicial District of New Britain.
TOWN OF WALLINGFORD
v.
STATE of Connecticut, DEPARTMENT OF PUBLIC HEALTH.
No. CV020515569.

July 27, 2005.

Wallingford Corporation Counsel, Wallingford, for Town of Wallingford.

AAG Richard Lynch and Rosemary McGovern, Hartford, for State of Connecticut, Department of Public Health.

JOSEPH M. SHORTALL, J.

*1 Vietnam Veterans Memorial Park (the park) in the town of Wallingford (the town) is the site of public recreational facilities, including five soccer fields, and a parking area serving those facilities. It is located on land owned by the town and classified as part of the legislative system to protect the purity and adequacy of the state's water supply.1 See General Statutes § 25-37a. This case requires the court to resolve the conflict which arose when the state department of public health (the department) ruled that the town's plans to improve and expand its recreational facilities in the park would run counter to a legislative restriction on the permissible uses for such land.

I

By virtue of General Statutes § 25-32a, the town, as the owner of a distributing system that supplies water to its residents, is a "water company," and the Supreme Court has specifically so held. See *Wallingford v. Department of Public Health*, 262 Conn. 758, 776 (2003). By virtue of General Statutes § 25-32(a), the department has jurisdiction over "all matters concerning the purity and adequacy of any water supply source used by any municipality, public institution or water company for obtaining water, the safety at any distributing plant and system for public health purposes, the adequacy of methods used to assure water purity, and such other matters relating to the construction and operation of such distributing plant and system as may affect public health," and the court has also specifically held that this statute gives the department jurisdiction over the town. *Id.*2

As part of its authority over the public water supply the department has the authority to issue or deny a permit to any water company which wishes to, among other things, change the use of any watershed lands. See General Statutes § 25-32(b). The legislature has established seven factors for the department to consider in passing on a request for such a permit, General Statutes § 25-32(c), and has placed several outright restrictions on its ability to grant such permits. See General Statutes § 25-32(e).

In its 2000 session the legislature created a program of state grants to municipalities and nonprofit land conservation organizations to acquire land for open space and watershed protection. Public Acts 2000, No. 203, § 2(b). No grant can be made under this program (or under a similar grant program established by Public Acts 1998, No. 157) for "(l)and to be used for commercial purposes or for recreational purposes requiring intensive development, including, but not limited to, golf courses, driving ranges, tennis courts, ballfields, swimming pools and uses by motorized vehicles ..." See General Statutes § 7-131d(c), as amended by No. 98-157 of the 1998 Public Acts, § 3(c), and No. 00-203 of the 2000 Public Acts, § 3(c). The legislature went further in the 2000 act to register its concern with recreational uses "requiring intensive development." In § 7 it amended the department's permitting statute, § 25-32, to require that, before a permit is issued for the sale, lease or assignment of any class II land, the classification of the land on which the park sits in Wallingford, a permanent conservation easement be entered on the land to "preserve the land in perpetuity predominantly in its natural scenic and open condition ..." And, "preservation in perpetuity shall not include permission for the land to be developed for any commercial, residential or industrial uses, nor shall it include permission for recreational purposes requiring intense development, including, but not limited to, golf courses, driving ranges, tennis courts, ballfields, swimming pools and uses by motorized vehicles ..." See § 25-32(c), as amended by No. 00-203 of the 2000 Public Acts, § 7.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00581-KAJ   Document 14-3   Filed 11/23/2005   Page 20 of 20

Not Reported in A.2d                                                                                                Page 2
Not Reported in A.2d, 2005 WL 1971865 (Conn.Super.), 39 Conn. L. Rptr. 862
(Cite as: 2005 WL 1971865 (Conn.Super.))

*2 Finally, having emphasized the disfavor with which it viewed recreational uses "requiring intense development," the legislature added the following as a new subsection (f) to § 25-32: "Nothing in this section shall prevent the lease or change in use of water company land to allow for recreational purposes that do *not* require intense development ... For purposes of this subsection, intense development includes golf courses, driving ranges, tennis courts, ballfields, swimming pools and uses by motorized vehicles ..." (Emphasis added.) No. 00-203 of the 2000 Public Acts, § 7. The interpretation of this last provision is at the heart of this case.

II

Pursuant to § 25-32(b), the town filed an application on February 25, 2002 for a permit to change the use of the class II land it owns in the park. It proposed to convert one of the existing soccer fields into two new Little League baseball fields, slightly expand the existing parking area, construct a new gravel-surfaced parking area of approximately 140 spaces and construct a new soccer field. The department denied the town's request on April 29, 2002. The ground for the denial was the department's ruling that § 25-32(f) prohibited approval of a change in use of class II land for recreational purposes requiring intense development, and that the proposed construction of a new soccer field and parking area constituted such development.3 This appeal followed, pursuant to General Statutes § 25-36 and in accordance with the provisions of the Uniform Administrative Procedure Act, specifically General Statutes § 4-183.

On June 2, 2003 the court (Levine, J.), with the agreement of the parties, remanded the matter for the department to take and consider additional evidence. That hearing was conducted on April 1, 2004, and the hearing officer issued a memorandum of decision on August 11, 2004, affirming the department's decision.4

III

Based on the pleadings and the record in this case, the court finds that the town is aggrieved by the department's decision to deny a permit for the proposed changes in use of the park land. The town's application and the material submitted to supplement the application (ROR # s 1 & 2) make clear the importance to the town of the proposed recreation and parking facilities, and the department's denial of a permit makes it impossible for the town to move forward with the project. Thus, the town meets the test for classical aggrievement in that it has a "specific personal and legal interest in the subject matter of the [department's] decision," which has been "specially and injuriously affected by the decision." *Harris v. Zoning Commission,* 259 Conn. 402, 410 (2002).

In denying the town's request for a permit the department ruled, in effect as a matter of law, that § 25-32(f) only "allows for a change in use of Class II water company land for recreational purposes that do not require intense development," ROR # 4, thereby excluding the town's proposed new soccer field and parking area.5 The hearing officer, too, construed the statute and concluded that the department's interpretation was the correct one. Supplemental Return of Record, Vol. 1, Memorandum of Decision.

*3 "Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts ... We also have held that an exception is made when a state agency's determination of a question of law has not previously been subject to judicial scrutiny ... the agency is not entitled to special deference." (Citations omitted; internal quotation marks omitted.) *Cadlerock Properties Joint Venture, L.P. v. Commissioner,* 253 Conn. 661, 669 (2000). Accord *Bridgeport Hospital v. Commission on Human Rights & Opportunities,* 232 Conn. 91, 109 (1995) ("As we have stated many times, the factual and discretionary determinations of administrative agencies are to be given considerable weight by the courts ... [however,] it is for the courts, and not for administrative agencies, to expound and apply governing principles of law" [Citations omitted; internal quotation marks omitted] ).

Since § 25-32(f) has never been the subject of judicial scrutiny,6 the department's construction of the statute is not entitled to special deference by the court, which must make its own determination of its meaning, employing current methods and principles of statutory interpretation.

IV

The approved method of statutory interpretation was recently reiterated by the Supreme Court in *Wiseman v. Armstrong,* 269 Conn. 802, 809 (2004):

> The process of statutory interpretation involves a reasoned search for the intention of the legislature ... In other words, we seek to determine, in a reasoned manner, the meaning of the statutory